Filed 4/22/13  In re K.L. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | B240694 |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>K.L.,<br><br>　　　　Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. JJ19437) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Reversed.

　　　　Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steve D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Minor K.L. appeals from the court's judgment sustaining the allegation that he committed residential burglary of Graciela Tinoco's home. Because the evidence was insufficient to sustain the allegation, we reverse.

**FACTS AND PROCEEDINGS**

For three or four days in late January 2012, then 14-year-old appellant K.L. was the invited house guest of Graciela Tinoco "living" with Tinoco and her 15-year-old son, Everardo. Around 9:00 or 10:00 a.m. on January 27, 2012, Tinoco returned home after dropping off her daughters at school. K.L., who had slept the previous night in Everardo's bedroom, had not yet left for school. Tinoco was surprised to find K.L. still at home. She testified, "I found him inside the house, but since he'd spend the night there, I asked him, [K.L.] what are you doing here. Why aren't you in school. [¶] He didn't answer. He just closed the door. He locked – he locked it, and I said, well who is there then. He said 'It's [K.L.], I'm changing.' " A few moments later, K.L. emerged from the bedroom and left the house. Tinoco looked inside the bedroom and saw that dresser drawers containing clothes were open. Because K.L. had been wearing the same clothes for "many days," Tinoco assumed he had been looking for socks.[1] Apart from the drawers, nothing in the room was otherwise amiss or missing. Tinoco testified, "Q. When you said that you saw him in the bedroom one day and he was – said, hold on, I'm changing. [¶] There was nothing stolen that day, was there? [¶] A. No. [¶] Q. Nothing unusual occurred that day? [¶] A. No."

Five days later on February 1, Tinoco's house and a neighboring house sitting in the front of the lot on which Tinoco's house sat were burglarized. In investigating the burglaries, a sheriff's detective interviewed Tinoco, who had seen the suspected burglars. The detective and Tinoco discussed her discovering K.L. five days earlier at home when

---

[1]      A detective's later report stated the drawers had been "ransacked," a description Tinoco did not adopt at trial; she instead testified the clothes had been "moved around."

she expected him to be at school. Tinoco testified, "Q. You talked to the police about when you saw him there that day; right? [¶] A. Yes. [¶] Q. Now, is that because they asked about it? [¶] A. We talked about the theft that same day from the front house. [¶] Q. So the officers were asking you about the theft from the front house? [¶] A. Yes. [¶] Q. Okay. So is that the reason you mentioned that you saw him in your house on the 27th? [¶] A. Yes. [¶] Q. But other than that, there was nothing unusual about him being in your son's room changing clothes? [¶] A. No."

The People filed an amended petition alleging K.L. committed residential burglary the morning Tinoco discovered him in the bedroom.[2] K.L. denied the allegation. Following trial, the court sustained the allegation and placed K.L. home on probation. This appeal followed.

## STANDARD OF REVIEW

In an "appeal challenging the sufficiency of the evidence to support a juvenile court judgment sustaining the criminal allegations of a petition made under the provisions of section 602 of the Welfare and Institutions Code, we must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal. Under this standard, the critical inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] An appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] [¶] In reviewing the evidence adduced at trial, our perspective must favor the judgment. [Citations.] 'This court must view the evidence in a light most

---

[2] The petition alleged two other counts of residential burglary against K.L. involving the February 1 burglaries of the front house and of Tinoco's house, but the court dismissed one count for insufficient evidence and found the other count untrue.

favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.]' " (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371-1373; see *In re Cesar V.* (2011) 192 Cal.App.4th 989, 994-995 [same].)

## DISCUSSION

Appellant contends the People's evidence against him was insufficient to find beyond a reasonable doubt that he had committed burglary the morning Tinoco discovered him in her son's bedroom where he had slept the night before. "The crime of burglary consists of an act – unlawful entry – accompanied by the 'intent to commit grand or petit larceny or any felony.' " (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) Appellant emphasizes the absence of evidence that he entered Tinoco's house or her son's bedroom with a felonious intent. He was an invited houseguest, and had permission to sleep in the very bedroom where Tinoco found him. (Cf. *People v. Sparks* (2002) 28 Cal.4th 71, 73 [one invited into house nevertheless commits burglary if he enters a separate room within the house with felonious intent]; *In re M.A.* (2012) 209 Cal.App.4th 317, 321 [same].) When Tinoco examined her son's bedroom after appellant emerged from it, she found nothing missing or anything unusual other than open drawers, which she assumed appellant had rummaged through looking for clean socks because he had been wearing the same clothing for "many days."

The prosecutor's theory at trial emphasized that appellant was supposed to be at school when Tinoco found him inside her son's bedroom, and that her arrival home after dropping off her daughters at school interrupted his plan to steal. The prosecutor's closing argument to the court summarized the People's case as follows: "He was seen inside the dwelling and based on the fact that he is there in the home at a time he is not supposed to be there, he is not usually there. Ms. [Tinoco] described to the court what the general schedule was for him spending the night there. He would leave in the

4

morning, go to school, and come home in the evening. It was very odd for him to be there that day. She was surprised for him to be there. He was startled when she came in, and she notices her son's drawer ransacked after. So far he is in a home at a time when he is not supposed to be there, caught by surprise, and also given the fact that this house in front is burglarized for loss of property, I think, clearly, circumstantially, the intent is shown why he was inside the house on the 27th. That is he was caught before he took anything."

The trial court did not discuss on the record its view of the evidence or explain its reasons for finding the burglary allegation true beyond a reasonable doubt. Viewing the evidence against appellant in the light most favorable to the prosecution's allegations, and indulging every reasonable inference that supports the trial court's judgment, we nevertheless find insufficient evidence to support the judgment. Appellant had Tinoco's permission to sleep in her son's bedroom. She testified, "Q. So you let [K.L.] live with you for about a week sometime in the end of January. [¶] A. Yes. [¶] Q. He had permission to sleep at your house; right? [¶] A. On my behalf, yes. . . . [¶] Q. But it was okay with you for him to stay at your house; right? [¶] A. Yes. [¶] Q. It was okay with you for him to sleep over; right. [¶] A. Yes. [¶] Q. And he would sleep over and in the morning you would take your daughters to school and him and your son Everardo would still be in the house; right? [¶] A. Yes, they stayed there. [¶] Q. And you trusted [K.L.] to stay in your house; right? [¶] A. Yes." The prosecution offered no evidence that appellant left the bedroom (or the house) after waking up that morning and then reentered the bedroom, with or without a felonious intent, while Tinoco was delivering her daughters to school. The prosecution offered no evidence that appellant committed, or intended to commit, any theft or other felony while in the bedroom, other than the speculation that Tinoco's return to the house interrupted appellant's plan to steal something. To the contrary, Tinoco herself offered the entirely reasonable – and unrebutted – explanation that appellant had opened dresser drawers looking for clean socks. It is true that appellant was supposed to be at school and not at home when Tinoco returned to her house, and in that sense his presence in the bedroom was without her

5

permission, perhaps a technical trespass.  But it is speculation that a teenage boy who may have overslept, lingered too long, or even perhaps hoped to play hooky, entered with a felonious intent a bedroom in which he had been invited to sleep.  The court erred in sustaining the burglary allegation.

## DISPOSITION

The judgment is reversed for insufficiency of evidence and the trial court is directed to dismiss the burglary allegation with prejudice.  (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1509; *In re Marco A.* (1996) 50 Cal.App.4th 1516, 1522.) Because we are reversing the judgment outright, we need not address appellant's other contentions on appeal.


RUBIN, Acting P. J.

WE CONCUR:



FLIER, J.



GRIMES, J.


6