Filed 6/12/14  In re J.D. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.D.,<br><br>        Defendant and Appellant. | E058923<br><br>(Super.Ct.No. J247710)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Barbara A. Buchholz, Judge.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

In this appeal, J.D. (minor) contends the People did not introduce substantial evidence that he committed attempted robberies, and that the juvenile court erred by declaring him a ward and placing him on probation. We conclude the record contains substantial evidence from which the juvenile court could reasonably have concluded that minor actually participated in the attempted robberies or aided and abetted other juveniles who did and, therefore, we affirm.

## FACTS

The People filed a petition in the juvenile court alleging minor is a person within the meaning of Welfare and Institutions Code section 602 because he committed two attempted robberies (Pen. Code, §§ 664, 211, counts 1-2), and because he committed battery resulting in serious bodily injury (Pen. Code, § 243, subd. (d), count 3).

C.Z. testified that after school on January 14, 2013, he and his friends S.L. and D.S. walked from their high school to a nearby restaurant. On the way there, C.Z. saw "a lot of kids" near the restaurant, but he and his friends ignored them. After getting their food, they walked out of the restaurant and started to walk back to the school. On the way back, as many as four juveniles approached them and asked them questions. C.Z. identified minor as one of the juveniles who had approached him. Another person, whom C.Z. identified as D.O., asked C.Z. "if [he] was from somewhere," and asked if he had a cellular phone or an iPod. When C.Z. answered "no," someone hit him from behind, in the right eye. He saw the person who hit him, but only "[b]y [a] blink of an eye." C.Z. and D.S. then ran away and C.Z. told S.L. to flee too. C.Z. ran to the school cafeteria and called the police to tell them what had happened. When he returned to where he had been

2

hit, C.Z. saw a man helping S.L. up from the ground but the juveniles who had approached them were gone. C.Z. testified he did not see S.L. being hit.

S.L. testified that he "got jumped" after school on January 14, 2013. While walking to a restaurant with his friends, S.L. saw "a bunch of Black people" across the street. Two Black juveniles and one Hispanic approached S.L. and his friends as they walked back to the school. One of the juveniles asked S.L. if he was in a gang, and S.L. told him that he and his friends were not gang members. S.L. tried to run down an alley but he stumbled and was assaulted. S.L. testified he was surrounded by the three juveniles who had approached him and also by another boy who had half blond hair. The blond boy hit him and tried to take away his backpack. S.L. identified D.O. and minor as being with the blond boy, but testified that neither D.O. nor minor hit him. S.L. only remembered the blond boy hitting him. D.O. asked S.L. for his "stuff," but minor did not try to take his property. With respect to minor, S.L. testified "[h]e didn't do nothing to me. I just saw him." A man then intervened, and the juveniles who had approached S.L. fled. Although S.L. specifically identified D.O., minor, and the blond boy, he testified that the group who had approached him had "way more" people in it.

An officer with the San Bernardino Unified School District Police Department testified that she investigated the incident. The officer interviewed S.L. at the hospital. S.L. told the officer that on the way to the restaurant, S.L. saw a large group of male and female juveniles, and that on the way back to school he and his friends were approached by two Black male juveniles and one Hispanic or light-skinned Black male juvenile. S.L. told the officer that a fourth male stood further back and that the group as a whole had

3

more than five but less than 10 juveniles in total. The officer also interviewed C.Z., who told her that on the way to the restaurant, he saw a large group of Black male and female juveniles but the group was gone when he walked out of the restaurant. On the way back to school, C.Z. saw three Black juveniles in front of him and a fourth somewhat further behind the other three.

The officer testified that, based on her interviews with S.L. and C.Z., she prepared photographic lineups and included three suspects who she thought might be involved and who matched the descriptions given to her by S.L. and C.Z. The first suspect was D.O. She regularly saw D.O. in the area of the school and had asked him to leave the area because he was not a student. The second suspect was T.W., who the officer saw every day after school with D.O. and because he had a "blond streak" in his hair. The third and final suspect was minor because she saw him earlier in the day on January 14, 2013, with D.O. and T.W in the same area where the incident had occurred. The officer showed the photographic lineups to C.Z., who identified D.O., minor, and T.W. as the three juveniles who were involved in the incident. The officer testified that C.Z. identified D.O. as the person who had asked him and his friends where they were from, if they had cellular phones or iPods, and as the person he saw hitting S.L. The officer also testified that C.Z. told her he saw S.L. being "assaulted by the subjects," meaning the three people he had identified in the photographic lineups. The officer also showed the photographic lineups to S.L., who identified D.O., minor, and T.W. as the juveniles who approached him and his friends.

4

On redirect, C.Z. testified that he recognized minor as a classmate. He also testified that, contrary to the officer's testimony, he did not see S.L. being kicked or hit when he returned to the scene after calling the police.

The officer testified on redirect that during her interview with C.Z., he gave a factual and confident statement, and that C.Z. told her that he saw the three juveniles kicking and hitting S.L. She also testified that C.Z. told her there were four other Black juveniles present besides the three who kicked and hit S.L.

A classmate and longtime friend of minor testified that she and minor rode the same city bus home from school, which leaves the school area around 3:17 p.m. and arrives near their homes around 3:30 p.m. She also testified that on January 14, 2013, minor boarded the bus as usual and that the two of them walked to minor's home after they exited the bus.

Minor's mother testified that on January 14, 2013, she arrived home around 3:35 p.m., and minor was there.

The juvenile court found the People proved beyond a reasonable doubt that minor committed two counts of attempted robbery, but found the People did not prove battery resulting in serious bodily injury. The juvenile court declared minor a ward of the court and placed him in the custody of his mother, subject to terms and conditions of probation. Minor timely appealed.

DISCUSSION

"'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.' [Citation.] Thus, 'we must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal. Under this standard, the critical inquiry is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] An appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] [¶] In reviewing the evidence adduced at trial, our perspective must favor the judgment. [Citations.] "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.] [¶] Before the judgment of the trial court can be set aside for insufficiency of the evidence . . . , it must clearly appear that upon no

6

hypothesis whatever is there sufficient substantial evidence to support it. [Citations.]'" [Citation.]" (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994-995.)

"Robbery is 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.)" (*People v. Watkins* (2012) 55 Cal.4th 999, 1018.) "An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission. [Citations.] Under general attempt principles, commission of an element of the crime is not necessary. [Citation.] As such, neither a completed theft [citation] nor a completed assault [citation], is required for attempted robbery. [Citation.]" (*People v. Medina* (2007) 41 Cal.4th 685, 694-695.)

Minor contends there is no evidence that he did anything to the victims, and that at most the evidence shows he was present while other people assaulted and tried to steal from them. He points to C.Z.'s testimony that it was D.O. who asked him about gang affiliations, cellular phones or iPods; that C.Z. did not identify minor as the person who hit him; and that C.Z. testified he did not see anyone hit or kick S.L. Minor also relies heavily on S.L.'s testimony that "[minor] didn't do nothing to me. I just saw [minor]," and that it was the blond boy who hit S.L. But, as the People contend, minor ignores the officer's testimony that C.Z. told her that when he returned to the scene of the assault after calling the police, he saw the three "subjects," i.e., minor, D.O., and T.W., hitting and kicking S.L. Minor responds that the officer's testimony is "opaque" and does not clearly show C.Z. identified minor as one of the juveniles who had hit S.L. We disagree.

The officer testified that, based on what she had learned from C.Z. and S.L., she assembled photographic lineups that included minor, D.O., and T.W. When the officer showed the lineups to S.L. and C.Z., they both identified minor, D.O., and T.W. as having approached them on January 14, 2013. When asked if C.Z. said anything about minor's behavior, the officer testified that C.Z. "picked out [minor] as being present." The prosecutor asked the officer if C.Z. "was able to identify whether certain people that he identified in the photographs were involved in certain aspects" of the incident. The officer testified that C.Z. told her, "when he returned to the scene . . . [S.L.] was there . . . being assaulted by the subjects." Any ambiguity in the statement "the subjects" was immediately cleared up when the officer answered, "yes" to the question, "[W]ere these the subjects that [C.Z.] identified in the photographic lineup?" i.e., minor, D.O., and T.W. This was a close case, but we must view the record in the light most favorable to the judgment. (*In re Cesar V.*, *supra*, 192 Cal.App.4th at pp. 994-995.) The juvenile court could reasonably have concluded that the officer's testimony about her interview with C.Z. was more credible than C.Z.'s denial that he saw anyone hit or kick S.L. and, further, could have reasonably concluded that minor actually participated in the assault and attempted robberies.

Moreover, the record contains substantial evidence from which the juvenile court could have reasonably concluded that minor aided and abetted other people in the attempted robberies. A juvenile adjudication on an aiding and abetting theory requires "proof that an aider and abettor act[ed] with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or

8

facilitating commission of, the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) "Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.'" (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.) To be liable as an aider and abettor, minor must have instigated or advised the commission of the crime or have been present for the purpose of assisting in the crime's commission. (*People v. Durham* (1969) 70 Cal.2d 171, 181.) He "'must share the criminal intent with which the crime was committed.'" (*Ibid*.) Mere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime. (*Ibid*.) "'Whether [minor] aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment.' [Citation.]" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

C.Z. and S.L. testified that they saw a large group of juveniles congregated near the restaurant. Both C.Z. and S.L. identified minor as being part of the small group of between three and five juveniles who approached them as they walked back to school from the restaurant. S.L. testified that when a man intervened, the juveniles who were beating him left the scene. C.Z. testified that, after running to call the police, he returned to the scene and the juveniles were gone. As stated, this was a close case. But from this testimony, the juvenile court could have reasonably concluded that minor left a larger group and, with three or four others, approached the victims. Even if minor said and did nothing to the victims, the juvenile court could have reasonably concluded that minor

9

stood close by while his friends (1) asked the victims if they were part of a gang, (2) asked the victims for their cellular phones or iPods, and (3) assaulted S.L. and tried to take his backpack. Moreover, the juvenile court could have reasonably concluded that when the man came to S.L.'s rescue, minor fled with his friends.

Courts have affirmed wardship adjudications for attempted robbery under similar circumstances. In *In re Lynette G.* (1976) 54 Cal.App.3d 1087, a teenage girl hit the victim over the head and stole the victim's handbag. (*Id*. at p. 1090.) After being struck in the head, the victim saw three other girls standing huddled together five feet away and then saw all four girls run away together. (*Id*. at p. 1091.) On appeal, the appellate court held that the People had introduced substantial evidence that the minor aided and abetted in the robbery. "Testimony by witnesses at the trial disclosed that [the minor] was present at the scene of the crime and had fled with the perpetrator and two others after the crime had been committed and was still in their company shortly thereafter. Although flight, in and of itself, may be explained by a desire merely to disassociate oneself from an unexpected criminal activity, the trial court was not required to adopt that view; it could, reasonably, have concluded that had [minor's] flight been from fear of an unjustified charge of involvement, she also would have immediately disassociated herself from the other three girls." (*Id*. at p. 1095.)

Likewise, in *In re Juan G.* (2003) 112 Cal.App.4th 1, the minor stood next to another boy as that boy robbed the victim at knifepoint. (*Id*. at p. 3.) The two boys fled and later were found together by the police. (*Id*. at p. 4.) The minor in that case testified he did not know his friend had a knife with him, and that he had nothing to do with the

robbery. (*Ibid*.) The appellate court concluded the minor's presence with his knife-wielding friend during the robbery and during his escape constituted substantial evidence of aiding and abetting in the robbery. (*Id*. at pp. 5-6.)

Minor argues that, contrary to *In re Lynette G.* and *In re Juan G.*, there is no evidence that he fled the scene or that he left with the other juveniles. But the juvenile court could reasonably have concluded that minor did not merely stroll away when the man showed up, and even if minor fled alone, the evidence of companionship with the assailants is substantial. Therefore, we must affirm the judgment. (*In re Cesar V.*, *supra*, 192 Cal.App.4th at pp. 994-995.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
                                                                          J.

We concur:


HOLLENHORST_____
              Acting P. J.


CODRINGTON_____
                   J.

11