Filed 7/8/22  P. v. Dennis CA4/3
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G055930 |
| v. | (Super. Ct. No. 12CF1469) |
| CORBIN YOSHIO DENNIS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed in part and reversed in part.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Julie L. Garland and Steve Oetting, Assistant Attorneys General, Arlene A. Sevidal, Lynne G. McGinnis and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

After being convicted of three counts of willful, deliberate, and premeditated attempted murder, three counts of second degree robbery, three counts of assault with a semiautomatic firearm, and a gang-related offense, with various enhancements attached to each, defendant Corbin Yoshio Dennis was sentenced to a determinate term of 23 years, 8 months and a consecutive indeterminate term of 45 years to life.[1]  At trial, one of the theories argued by the prosecution was that defendant was guilty of the attempted premeditated murders under the natural and probable consequences doctrine based on his involvement in the target crime of unlawfully challenging another person to fight in a public place.

In a prior published opinion, another panel of this court affirmed the judgment in part, reversed it in part, and remanded for further proceedings.  (*People v. Dennis* (2020) 47 Cal.App.5th 838, review granted July 29, 2020, S262184, transferred with directions and depublished Jan. 5, 2022.)  Our Supreme Court granted review and transferred the matter back to us with directions to vacate our prior decision and reconsider in light of Senate Bill No. 775 (Stats. 2021, ch. 551) (Senate Bill 775), which took effect on January 1, 2022.  The parties thereafter filed supplemental briefs addressing Senate Bill 775's effect on the appeal.  (Cal. Rules of Court, rule 8.200(b)(1).)

Complying with the Supreme Court's directions, we vacated our prior decision.  We agree with the parties that defendant's three attempted murder convictions must be reversed in light of Senate Bill 775's amendments to Penal Code section 1170.95.[2]  While defendant seeks remand for resentencing on the remaining counts, we agree with the Attorney General that the prosecution must be given the opportunity on remand to decide whether to retry defendant's attempted murder charges on a valid legal

---

[1] As a convenient shorthand, we will refer to the findings that the attempted murders were "willful, deliberate, and premeditated" as simply "premeditated."

[2] All further statutory references are to the Penal Code unless otherwise stated.

2

theory. If the prosecution foregoes that option, defendant will be entitled to a full resentencing hearing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, . . . 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].) Thus, we reverse defendant's attempted murder convictions, vacate the enhancements attached to them, and vacate defendant's sentence in its entirety. In all other respects, we affirm the judgment.

FACTS

As three teenagers socialized next to an abandoned railroad right-of-way, two males, later identified as defendant and Luis Mendoza, climbed over a nearby fence and approached them. Mendoza asked the group where they were from, to which one replied they were not from anywhere. He repeated his question as one of the three, M.G., took steps toward him. Mendoza pulled out a semiautomatic pistol from his waistband. M.G. again responded to the question, this time stating, "We don't claim anybody. If you're going to shoot us, shoot us."

The situation escalated with defendant and Mendoza both declaring they were from "Hard Times" or saying "this is Hard Times." Mendoza followed up by shooting M.G. in the shoulder and in each leg. M.G. fell to the ground and the two others in his group started to run away. Mendoza proceeded to fire three or four more shots in their direction as they ran, then he and defendant took off on foot in a different direction.

When police officers arrived at the scene, M.G. was lying on the ground suffering from gunshot wounds. He was transported to a hospital where he received treatment over the course of a few days before being released. Officers recovered three nine-millimeter bullet casings from the crime scene.

That same evening, defendant and Mendoza approached another set of three teenagers walking through the abandoned railroad right-of-way. Holding a

3

semiautomatic gun, Mendoza ordered them to "get on the ground or you're going to die, and drop your shit." He took the gun and hit one of the three, A.C., in the head, causing him to bleed and fall to the ground. A.C. put his cellular phone and skateboard on the ground next to him, and another of the three, R.C., got on the ground and did the same with his portable media player, skateboard and keys.

With all three lying on the ground, Mendoza struck two of them in the head with the gun. Defendant went through A.C.'s and R.C.'s pockets, took what all three individuals had placed on the ground, and Mendoza told the group to leave. Mendoza ended the interaction by stating, "Get up or you're going to die," and the three ran off.

Defendant and Mendoza subsequently fled toward an adjacent mobile home park. A witness observed two males running through the backyard of her mobile home property, one of whom she recognized as defendant. Police officers later located a portable media player in the same backyard, as well as a baseball hat and skateboard near a wall leading to the mobile home park. They returned the items to R.C.

A few days later, police officers arrested Mendoza. At the time of his arrest, Mendoza possessed a camera and a Samsung cellular phone. Police later determined those items belonged to the third individual involved in the second incident at the railroad tracks and returned the items to him.

An information charged defendant with three counts of attempted murder (§§ 187, subd. (a), 664, subd. (a); counts 1-3), three counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 4-6), three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 7-9), and street terrorism (§ 186.22, subd. (a); count 10).[3] As to the attempted murder counts, it was alleged they were committed willfully, deliberately and with premeditation, within the meaning of section 664, subdivision (a).

---

[3] Defendant was also charged with a misdemeanor count of disobeying a gang injunction (former § 166, subd. (a)(10); count 11). This count was bifurcated for trial but later dismissed pursuant to the People's motion.

Additional allegations against defendant included the following: as to counts 1 through 6, defendant was a gang member who vicariously discharged a firearm; as to count 1, defendant was a gang member who vicariously discharged a firearm causing great bodily injury; and as to the first nine counts, defendant committed the charged crimes for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1).

A gang expert testified at trial. He explained the origins of the Hard Times gang, its common signs and colors, territory, and primary activities. The gang expert further explained that one of the gang's chief rivals is Santa Nita and the alleged attempted murders and robberies took place at a location on the border between Hard Times territory and Santa Nita territory.

After confirming his investigation showed defendant and Mendoza were both members of Hard Times, the expert opined the charged offenses were done in association with a gang and furthered the criminal purpose of a gang because two members were present. He further opined the offenses were committed for the benefit of Hard Times. The expert testified a gang's reputation for violence is enhanced when a member of the gang brandishes a firearm and calls out the gang's name. It also demonstrates and strengthens the gang's power and control over territory.

Additional evidence revealed that in the couple of years before the alleged incidents, police contacted defendant multiple times and observed him with Mendoza on at least three occasions. On one occasion, defendant denied being a member of the Hard Times gang, but on other separate occasions, he admitted he belonged to the gang.

The jury found defendant guilty of all counts and found true all the allegations. Prior to sentencing and in response to an unopposed defense motion, the court held a fitness hearing pursuant to Welfare and Institutions Code section 707. Although defendant was 16 years old at the time of the charged offenses, the court determined he was unfit to be tried as a juvenile.

5

The court sentenced defendant to a total of 23 years 8 months, plus 45 years to life in state prison. The latter was comprised of a 15-years-to-life sentence on each of the three attempted murder counts. The former consisted of the upper term of five years for the robbery conviction in count 4, plus a 10-year gang enhancement on that count, and one-year terms on the robbery convictions in counts 5 and 6, plus a 40-month gang enhancement on each of those counts. Pursuant to section 654, the trial court stayed the sentences on counts 7 through 10.

## DISCUSSION

Originally, defendant brought multiple claims challenging his attempted premeditated murder convictions. He contended he was entitled to the ameliorative benefits of Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437), which abolished the natural and probable consequences doctrine as a theory of vicarious liability for murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Alternatively, he argued the findings that the attempted murders were willful, deliberate, and premeditated must be stricken. He reasoned the court committed prejudicial error by failing to instruct the jury it was required to determine whether attempted premeditated murder was a natural and probable consequence of the target crime before rendering the premeditation findings. He also asserted there was insufficient evidence of the alleged target crime, challenging another person in a public place to fight (§ 415, subd. (1)), and therefore the court committed instructional error by instructing the jury on this target offense. Defendant further asserted because there was insufficient evidence of the target crime, his attempted murder convictions must be reversed due to insufficient evidence.

In a published opinion, a prior panel of this court concluded Senate Bill 1437 did not apply to attempted murder. It also concluded substantial evidence supported the court's instruction on the target offense and therefore defendant's attempted murder convictions were supported by substantial evidence. However, it agreed with defendant's

6

claim of instructional error concerning attempted *premeditated* murder on a natural and probable consequences theory and vacated the findings that the attempted murders were willful, deliberate, and premeditated. The panel ordered the matter remanded to the trial court to give the prosecution the opportunity to decide whether to retry the premeditation allegations under jury instructions that required the jury to determine whether attempted premeditated murders were the natural and probable consequence of the target offense. (*People v. Dennis, supra*, 47 Cal.App.5th 838, review granted July 29, 2020, S262184, transferred with directions and depublished Jan. 5, 2022.) Having vacated the prior opinion, we now reconsider the matter in light of Senate Bill 775, as directed by the Supreme Court.

Defendant contends his attempted murder convictions must be reversed pursuant to Senate Bill 775, and the Attorney General concedes the issue. We agree with the parties. Because we are reversing defendant's attempted murder convictions, the premeditation findings attached to those convictions must be vacated also. Therefore, defendant's original claim concerning the premeditation findings is now moot and need not be addressed. However, we address out of an abundance of caution defendant's original claim that the court's instruction on the alleged target crime was not supported by sufficient evidence and therefore his attempted murder convictions were not supported by substantial evidence. Arguably it is unnecessary to do so as this claim concerns the now invalid natural and probable consequences theory and defendant cannot be retried on this theory. We consider the claim nonetheless to forestall a potential double jeopardy argument as it pertains to the attempted murder charges, and should the prosecution decide to retry defendant on a still-valid theory. We conclude there was substantial evidence to support defendant's attempted murder convictions under the law at the time of his trial.

I. *Substantial Evidence of Attempted Murder*

For the attempted murder charges against defendant, the jury was instructed on the aiding and abetting, natural probable consequences doctrine, with the alleged target crime being unlawfully challenging another person in a public place to fight (§ 415, subd. (1)). In the trial court, defendant's counsel objected to the court's instruction, arguing the facts, as a matter of law, did not demonstrate a challenge to fight within the meaning of section 415. On appeal, defendant contends there was insufficient evidence to support giving the instruction, as well as a lack of substantial evidence supporting his attempted murder convictions based thereon. We conclude otherwise.

In a criminal case, the trial court "must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof. [Citation.] We review the trial court's decision de novo. In so doing, we must determine whether there was indeed sufficient evidence to support the giving of [the challenged] instruction. Stated differently, we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed" the offense on which the court instructed. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

Section 415, subdivision (1), imposes misdemeanor liability on "[a]ny person who unlawfully fights in a public place or challenges another person in a public place to fight." "A *challenge* to fight is prohibited because such a challenge may provoke a violent response that endangers not only the challenger but any other persons who may be in the public place where the challenge occurs. Because the statute is aimed at the inherent danger that a challenge will result in violence, it is irrelevant whether the challenger intended to actually cause a fight." (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 998.)

Here, the evidence demonstrated defendant and Mendoza jumped a fence from territory claimed by Hard Times into an area bordering the territory claimed by one

8

of their rival gangs, Santa Nita. They approached three males and asked them, "Where you from?" The prosecution's gang expert testified that when gang members "hit up" others with such a question, it is a form of aggression. They wait for a reply and then "things happen" based on the reply. If the response "comes back as a rival, they're going to have to engage in a fight." In other words, according to the expert, "if [gang members are] initiating contact, they're expecting to [fight]."

From this evidence, a reasonable trier of fact could find beyond a reasonable doubt that defendant and Mendoza issued a challenge to fight. (See *People v. Medina* (2009) 46 Cal.4th 913, 922 [former gang member testified "a gang member's query 'where are you from?' . . . is a verbal challenge, which (depending on the response) could lead to a physical altercation and even death"]; *In re Cesar V., supra*, 192 Cal.App.4th at pp. 998-999.) We reject defendant's contention that an implied challenge to fight falls outside the scope of section 415. Defendant provides no legal authority for that proposition and nothing in the language of the statute suggests such a limitation. And contrary to defendant's assertion, it is irrelevant there was a possibility no fight would ensue. (*In re Cesar V.,* at p. 999 & fn. 5.)

Because defendant's argument concerning sufficiency of the evidence to support his attempted murder convictions is premised on the same facts and law as his challenge to the court's instruction on section 415, we likewise find it meritless. (See *People v. Cravens* (2012) 53 Cal.4th 500, 508 [under substantial evidence standard of review, "[t]he conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]"'"].)

II. *Senate Bill 775*

"Senate Bill 775 amended section 1170.95. As relevant, it now reads: 'A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes

9

made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018).' (§ 1170.95, subd. (g).) Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.)

Here, the jury was instructed defendant could be convicted of the attempted murders under either a theory he directly aided and abetted Mendoza in the commission of those offenses or under a natural and probable consequences theory. (CALCRIM Nos. 400, 401, 403.) In closing argument, the natural and probable consequences theory was the prosecution's predominant theory. The prosecutor argued defendant was guilty of the attempted murders because he aided and abetted Mendoza in a challenge to fight, a violation of section 415, subdivision (1), and the attempted murders were a natural and probable consequence of defendant's involvement in the challenge to fight. The jury found defendant guilty of the attempted murders in a general verdict that did not specify which theory it relied upon in reaching its verdict. As the Attorney General concedes, the natural and probable consequences theory is no longer viable under the changes made by Senate Bills 1437 and 775 and it cannot be concluded beyond a reasonable doubt that the jury's verdict rested on the still-valid theory of direct aiding and abetting. Thus, defendant is entitled to reversal of his attempted murder convictions. (*People v. Sanchez, supra*, 75 Cal.App.5th at pp. 196-197.)

Defendant requests we remand his case for resentencing on the remaining counts. The proper remedy, however, is to remand and give the prosecution the opportunity to decide whether to retry the attempted murder charges on a still-valid legal theory. (See *People v. Hola* (2022) 77 Cal.App.5th 362, 376 ["when there is a change in the law during an appeal that invalidates a previously valid legal theory relied upon by prosecution and reversal is thereby warranted, a new trial should be permitted on legally valid theories"]; *People v. Perez* (2022) 78 Cal.App.5th 192, 205.) The prosecution may

10

retry defendant on the attempted murder charges "if it can *in good faith* advance a valid legal theory to support" them.  (*People v. Hola, supra*, 77 Cal.App.5th at p. 377.)

## DISPOSITION

Defendant's attempted murder convictions are reversed and their attending findings and enhancements are vacated.  The matter is remanded to give the prosecution the opportunity to decide whether to retry the attempted murder charges, premeditation findings, and enhancements on a valid theory.  The sentence is vacated in its entirety and the matter is remanded for further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.