Filed 4/14/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

   Plaintiff and Respondent,

      v.

CORBIN YOSHIO DENNIS,

   Defendant and Appellant.

G055930

(Super. Ct. No. 12CF1469)

O P I N I O N

         Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge. Affirmed in part and reversed in part.

         Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

         Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

              *         *         *

After being convicted of three counts of willful, deliberate, and premeditated attempted murder, three counts of second degree robbery, three counts of assault with a semiautomatic firearm and a couple of gang-related offenses, with various enhancements attached to each, the trial court sentenced defendant Corbin Yoshio Dennis to a total of 23 years 8 months, plus 45 years to life in state prison.[1] The attempted premeditated murder convictions were grounded in a theory that defendant aided and abetted the actual shooter's attempted premeditated murders by committing the target crime of unlawfully challenging another person in a public place to fight, the natural and probable consequence of which was attempted murder (not attempted premeditated murder).

Defendant contends he is entitled to the ameliorative benefits of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437), which he claims requires reduction of the attempted murder convictions to misdemeanors for disturbing the peace and resentencing to give him credit for time served. He also argues there is insufficient evidence to support his attempted murder convictions.

Alternatively, he contends the special finding under Penal Code section 664, subdivision (a), that the attempted murders were willful, deliberate, and premeditated, must be stricken.[2] He reasons the court erred by failing to instruct the jury that in order to make the special finding of premeditation based on a natural and probable consequences theory, it was required to find attempted *premeditated* murder was a natural and probable consequence of the target crime.

---

[1] As a convenient shorthand, we will refer to the special findings that the attempted murders were "willful, deliberate, and premeditated" as simply "premeditated."

[2] All further statutory references are to the Penal Code unless otherwise stated.

Finally, defendant contends there was insufficient evidence of the alleged target crime, challenging another person in a public place to fight (§ 415, subd. (1)). He asserts the court committed instructional error by instructing the jury concerning this target offense and that his attempted murder convictions must be reversed due to insufficient evidence.

We conclude Senate Bill 1437 is not a bar to defendant's convictions for attempted murder under the natural and probable consequences theory. The legislation reaches the crime of murder but has no application to attempted murder. In that regard we adopt the reasoning of *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*), and reject the reasoning of *People v. Medrano* (2019) 42 Cal.App.5th 1001, review granted March 11, 2020, S259948 (*Medrano*). We also conclude substantial evidence supports defendant's attempted murder convictions.

But we also conclude defendant's claim of instructional error regarding attempted premeditated murder on a natural and probable consequences theory has merit. The court's instruction constituted a Sixth Amendment violation because it allowed the jury to find the attempted murders were premeditated without requiring the jury to find that attempted *premeditated* murder was the natural and probable consequence of the target offense. *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*) held any fact that increases the minimum penalty for a crime is an *element* of the offense, which must be submitted to the jury and found true beyond a reasonable doubt. (*Id*. at p. 103.) That was not done here. The ratio decidendi of the United States Supreme Court in *Alleyne* is contrary to the ratio decidendi of the California Supreme Court in *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), thereby requiring us to adhere to *Alleyne* and not *Favor*.

Finally, we conclude substantial evidence supported the giving of the challenged instruction concerning the target offense.

FACTS

As three teenagers socialized next to an abandoned railroad right-of-way, two males, later identified as defendant and Luis Mendoza, climbed over a nearby fence and approached them. Mendoza asked the group where they were from, to which one replied they were not from anywhere. He repeated his question as one of the three, M.G., took steps toward him. Mendoza pulled out a semiautomatic pistol from his waistband. M.G. again responded to the question, this time stating, "We don't claim anybody. If you're going to shoot us, shoot us."

The situation escalated, with defendant and Mendoza both declaring they were from "Hard Times" or saying "this is Hard Times." Mendoza followed up by shooting M.G. in the shoulder and in each leg. M.G. fell to the ground and the two others in his group started to run away. Mendoza proceeded to fire three or four more shots in their direction as they ran, then he and defendant took off on foot in a different direction.

When police officers arrived at the scene of the shooting, M.G. was laying on the ground with apparent gunshot wounds. He was transported to a hospital where he received treatment over the course of two or three days before being released. Officers recovered three nine-millimeter bullet casings from the crime scene.

That same evening, defendant and Mendoza approached another set of three teenagers walking through the abandoned railroad right-of-way. Holding a semiautomatic gun, Mendoza ordered them to "get on the ground or you're going to die, and drop your shit." He took the gun and hit one of the three, A.C., in the head, causing him to bleed and fall to the ground. A.C. put his cellular phone and skateboard on the ground next to him, and another of the three, R.C., got on the ground and did the same with his portable media player, skateboard and keys.

With all three laying on the ground, Mendoza struck two of them in the head with the gun. Defendant went through A.C.'s and R.C.'s pockets, took what all

4

three individuals had placed on the ground, and Mendoza told the group to leave. Mendoza ended the interaction by stating, "Get up or you're going to die," and the three ran off.

Defendant and Mendoza subsequently fled toward an adjacent mobile home park. A witness observed two males running through the backyard of her mobile home property, one of whom she recognized as defendant. Police officers later located a portable media player in the same backyard, as well as a baseball hat and skateboard near a wall leading to the mobile home park. They returned the items to R.C.

A few days later, police officers arrested Mendoza. At the time of his arrest, Mendoza possessed a camera and a Samsung cellular phone. Police later determined those items belonged to the third individual involved in the second incident at the railroad tracks and they returned the items to him.

An information charged defendant with three counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a); counts 1-3), three counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 4-6), three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 7-9), street terrorism (§ 186.22, subd. (a); count 10), and disobeying a gang injunction (§ 166, subd. (a)(10); count 11).[3] As to the attempted murder counts, it further alleged the attempted murder was committed willfully, deliberately and with premeditation, within the meaning of section 664, subdivision (a). Additional allegations against defendant included the following: as to counts 1 through 6, that defendant was a gang member who vicariously discharged a firearm; as to count 1, that defendant was a gang member who vicariously discharged a firearm causing great bodily injury; and as to the first nine counts, that defendant committed the charged crimes for the benefit of a criminal street gang, Hard Times, within the meaning of section 186.22, subdivision (b)(1).

---

[3] Count 11 was later dismissed pursuant to a motion by the People.

5

A gang expert testified at trial. He explained the origins of the Hard Times gang, its common signs and colors, and its territory. Among the primary activities of the gang, which had more than 40 members at the time of the charged incidents, are robberies, assaults, homicides, possessions of firearms by felons, and possession of loaded firearms in public. He further explained that one of the gang's chief rivals is Santa Nita, and the alleged attempted murders and robberies took place at a location on the border between Hard Times territory and Santa Nita territory.

After confirming his investigations showed defendant and Mendoza were both members of Hard Times, the expert opined the charged offenses were done in association with a gang, and furthered the criminal purpose of a gang, because two members were present. He further opined they were committed for the benefit of Hard Times. Brandishing a firearm and calling out the gang's name enhances its reputation for violence. It also demonstrates and furthers the gang's power and control over territory.

Additional evidence revealed that in the couple of years before the alleged incidents, police contacted defendant multiple times and observed him with Mendoza on at least three occasions. On one occasion, defendant denied being a member of the Hard Times gang, but on other separate occasions he was in possession of a notebook containing writings consistent with gang activity and he admitted he belonged to the gang.

The jury found defendant guilty of all counts charged, and it found true all the special allegations. Prior to sentencing and in response to an unopposed defense motion, the court held a fitness hearing pursuant to Welfare and Institutions Code section 707. Although defendant was 16 years old at the time of the charged offenses, the court determined he was unfit to be tried as a juvenile.

The trial court sentenced defendant to a total of 23 years 8 months, plus 45 years to life in state prison. The latter comprised a 15-years-to-life sentence on each of the three attempted murder counts. The former consisted of the upper term of five years

on count 4, plus a 10-year gang enhancement on that count, and one-year terms on counts 5 and 6, plus a 40-month gang enhancement on each of those counts. Pursuant to section 654, the trial court stayed defendant's sentence on counts 7 through 10.

DISCUSSION

*Senate Bill 1437 Does Not Apply to Attempted Murder*

The prosecution pursued attempted murder charges against defendant on an aiding and abetting theory, arguing the attempted murders were a natural and probable consequence of his commission of another offense—challenging another person in a public place to fight (§ 415, subd. (1)). Defendant contends he is entitled to the ameliorative benefits of Senate Bill 1437, which took effect January 1, 2019. He urges us to reverse the judgment and remand the matter for the trial court to (1) reduce his attempted murder convictions to misdemeanor disturbing the peace, and (2) resentence him, accordingly, giving him credit for time served. The Attorney General argues, inter alia, that Senate Bill 1437 does not apply to convictions for *attempted* murder, as opposed to murder. We agree with the Attorney General.

This issue is pending before the California Supreme Court in its review of *Lopez*, *supra*, 38 Cal.App.5th 1087, review granted. The high court limited its review of *Lopez* to two issues, one of which asks whether Senate Bill 1437 applies to attempted murder liability under the natural and probable consequences doctrine. There currently exists a split of authority in California's appellate courts as to whether Senate Bill 1437 applies to attempted murder. Two opinions from the Second District Court of Appeal, *Lopez* and *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S252291 (*Munoz*), have each held "[a]s a matter of statutory interpretation, Senate Bill 1437's legislative prohibition of vicarious liability for murder does not, either expressly or impliedly, require elimination of vicarious liability for attempted murder."

7

(*Lopez*, at p. 1106.) "Senate Bill 1437 does not apply to the offense of attempted murder." (*Munoz*, at p. 753; see *Lopez*, at pp. 1103-1106.) On the other hand, three opinions from the Fifth District Court of Appeal have held to the contrary. (*Medrano*, *supra*, 42 Cal.App.5th at p. 1015, review granted; *People v. Larios* (2019) 42 Cal.App.5th 956, 964-968, review granted February 26, 2020, S259983 (*Larios*); *People v. Sanchez* (2020) 46 Cal.App.5th 637 (*Sanchez*).) As we will explain, we conclude *Lopez* and *Munoz* are the better reasoned opinions, and we will adhere to their conclusions.

"Senate Bill 1437 was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability. Senate Bill 1437 also adds . . . section 1170.95, which allows those 'convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . .'" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Under section 188, subdivision (a)(3), as amended, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." And under section 189, as amended, to be liable for murder based on an underlying felony or attempted felony listed in subdivision (a), a person must fall into one of the following categories of people: (1) the actual killer; (2) although not the actual killer, a person who intended to kill and assisted the actual killer in the commission of first degree murder; or

(3) a major participant in the underlying felony who acted with reckless indifference to human life.  (§ 189, subd. (e)(1)-(3).)

Defendant contends Senate Bill 1437 precludes convictions of attempted murder under the natural and probable consequences doctrine.  We disagree.  Senate Bill 1437 addresses only murder and not the crime of attempted murder.  In *Lopez*, *supra*, 38 Cal.App.5th 1087, review granted, our colleagues in the Second Appellate District, Division Seven explained: "Here, there is nothing ambiguous in the language of Senate Bill 1437, which, in addition to the omission of any reference to attempted murder, expressly identifies its purpose as the need 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  [Citation.]  Had the Legislature meant to bar convictions for attempted murder under the natural and probable consequences doctrine, it could easily have done so.  [Citations.]

"The Legislature's obvious intent to exclude attempted murder from the ambit of the Senate Bill 1437 reform is underscored by the language of new section 1170.95, the provision it added to the Penal Code to permit individuals convicted before Senate Bill 1437's effective date to seek the benefits of the new law from the sentencing court. Section 1170.95, subdivision (a), authorizes only those individuals 'convicted of felony murder or murder under a natural and probable consequences theory' to petition for relief; and the petition must be directed to 'the petitioner's murder conviction.' Similarly, section 1170.95, subdivision (d)(1), authorizes the court to hold a hearing to determine whether to vacate 'the murder conviction.'

9

"The plain language meaning of Senate Bill 1437 as excluding any relief for individuals convicted of attempted murder is fully supported by its legislative history. [Citations.] When describing the proposed petition process, the Legislature consistently referred to relief being available to individuals charged in a complaint, information or indictment 'that allowed the prosecution to proceed under a theory of first degree felony murder, second degree felony murder, or murder under the natural and probable consequences doctrine' and who were 'sentenced to first degree or second degree murder.' [Citation.] In addition, when discussing the fiscal impact and assessing the likely number of inmates who may petition for relief, the Senate Committee on Appropriations considered the prison population serving a sentence for first and second degree murder and calculated costs based on that number. [Citation.] The analysis of potential costs did not include inmates convicted of attempted murder." (*Lopez, supra,* 38 Cal.App.5th at pp. 1104-1105, review granted, fn. omitted; see *Munoz, supra,* 39 Cal.App.5th at p. 760, review granted ["The remedy for any potentially inequitable operation of section 1170.95 lies with the Legislature. If the Legislature concludes it is unwise or inequitable to exclude attempted murderers from Senate Bill 1437's reach, it has only to amend the law"].)

We adopt the above reasoning of the *Lopez* court. Defendant is not entitled to relief under Senate Bill 1437 for his attempted murder convictions.

In our view, the *Medrano*, *Larios*, and *Sanchez* courts rested their contrary conclusion on a flawed premise—that to be convicted as an aider and abettor under the natural and probable consequences doctrine a defendant must share the mental state of the direct perpetrator. Specifically, *Medrano* quotes *People v. McCoy* (2001) 25 Cal.4th 1111, a case dealing with *direct* aiding and abetting, saying "'[O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator.' [Citation.] It follows that if malice is an element of a charged offense, accomplice liability under the natural and probable consequences

10

doctrine necessarily entails the imputation of malice." But, as the *Medrano* court reasoned, since Senate Bill 1437's amendment to section 188 requires that "*Malice shall not be imputed to a person based solely on his or her participation in a crime*," a defendant may no longer be convicted of attempted murder under the natural and probable consequences doctrine. (*Medrano*, at p. 1013.)

The validity of the *Medrano* court's analysis depends upon its initial premise—that "'an aider and abettor's mental state must be at least that required of the direct perpetrator.'" (*Medrano*, *supra*, 42 Cal.App.5th at p. 1013.) But the authority it quotes for this proposition, *McCoy*, *supra*, 25 Cal.4th at page 1118, was not addressing the natural and probable consequences doctrine. The *McCoy* court, in addition to excluding the natural and probable consequences doctrine from the very rule quoted by the *Medrano* court, also cautioned the reader that "[n]othing we say in this opinion necessarily applies to an aider and abettor's guilt of an unintended crime under the natural and probable consequences doctrine." (*McCoy*, at p. 1117.) Thus, it simply does not follow that the rule requiring the mental state of a direct aider and abettor "must be at least that required of the direct perpetrator" (*id.* at p. 1118) applies to an aider and abettor under the natural and probable consequences doctrine. Quite to the contrary. "[B]y its very nature, aider and abettor liability under the natural and probable consequences doctrine is not premised on the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. The doctrine imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense. It is not an implied malice theory; the mens rea of the aider and abettor with respect to the nontarget offense, actual or imputed, is irrelevant. [Citation.] Rather, liability is imposed because a reasonable person could have foreseen the commission of the additional offense." (*Lopez*, *supra*, 38 Cal.App.5th at p. 1102-1103, review granted, fn. omitted; *People v. Chiu* (2014) 59 Cal.4th 155, 164 (*Chiu*) ["Because the nontarget offense is unintended, the mens rea of the aider and

11

abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the target crime"].)

Accordingly, Senate Bill 147 does not entitle defendant to a reversal of his attempted murder convictions under the natural and probable consequences doctrine. But, as we shall now explain, the jury's special finding that defendant acted with deliberation and premeditation must be stricken.

*Aider and Abettor Liability for Attempted Premeditated Murder*

Whether a defendant may be convicted of attempted *premeditated* murder based on the natural and probable consequences doctrine is also an issue being addressed by the California Supreme Court's review of *Lopez, supra*, 38 Cal.App.5th 1087, review granted. The Supreme Court granted review, inter alia, on the following question: "In order to convict an aider and abettor of attempted willful, deliberate and premeditated murder under the natural and probable consequences doctrine, must a premeditated attempt to murder have been a natural and probable consequence of the target offense? In other words, should *People v. Favor* (2012) 54 Cal.4th 868 be reconsidered in light of *Alleyne v. United States* (2013) 570 U.S. 99 and *People v. Chiu* (2014) 59 Cal.4th 155?"

Even if Senate Bill 1437 allows an attempted murder conviction based on the natural and probable consequences doctrine, defendant nevertheless contends the special finding of premeditation and deliberation must be stricken. He asserts the trial court erred in instructing the jury. He argues the court was required to instruct he could not be convicted of attempted premeditated murder on a natural and probable consequences theory unless the jury concluded attempted *first degree* murder, as opposed to second degree murder, was a natural and probable consequence of the target crimes. In so arguing, he acknowledges the California Supreme Court's decision in *Favor, supra*, 54 Cal.4th 868 stands to the contrary. But from his perspective, *Favor* is no longer good law in light of *Alleyne, supra*, 570 U.S. 99, and *Chiu, supra*, 59 Cal.4th 155. The

12

Attorney General argues that *Favor* has not been expressly overruled, and that we are bound under principles of stare decisis to adhere to it. Before addressing these competing arguments, it is helpful to set forth a brief overview of the relevant legal principles as understood, at least before the United States Supreme Court decided *Alleyne* and the California Supreme Court decided *Chiu*.

A. The Natural and Probable Consequences Doctrine

"An aider and abettor is one who acts 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.]

"'"A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."' [Citations.] 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.'" (*Chiu, supra*, 59 Cal.4th at p. 161.) The rationale behind the doctrine is that "'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.'" (*People v. Prettyman* (1996) 14 Cal.4th 248, 260.) "A nontarget offense is a '"natural and probable consequence"' of the target offense if, judged objectively, the additional offense was reasonably foreseeable. [Citation.] The inquiry does not depend on whether the aider and abettor actually foresaw the nontarget offense. [Citation.] Rather, liability '"is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted."'" (*Chiu, supra*, 59 Cal.4th at pp. 161-162.)

13

B. Murder and Attempted Murder

"First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation, which trigger a heightened penalty. [Citation.] That mental state is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death." (*Chiu, supra*, 59 Cal.4th at p. 166.)

As to a perpetrator and a direct aider and abettor, "'[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Smith* (2005) 37 Cal.4th 733, 739.) But as to an aider and abettor charged under the natural and probable consequences doctrine, the attempted murder is unintended. Thus, the mens rea of the aider and abettor with respect to the attempted murder is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the attempted murder. (*Chiu, supra*, 59 Cal.4th 155, 161-162.) Punishment for attempted murder varies and is set forth in section 664. Subdivision (a) provides that a person guilty of attempted murder must be punished by imprisonment in the state prison for five, seven, or nine years. However if the person is guilty of attempted willful, deliberate and premeditated murder, the punishment is imprisonment for life.

C. The Interplay of Aiding and Abetting, Attempt and First Degree Murder

Resolution of the ultimate issue before us requires consideration of four principal cases:  *People v. Lee* (2003) 31 Cal.4th 613 (*Lee*), *Favor, supra*, 54 Cal.4th 868, *Alleyne, supra*, 570 U.S. 99, and *Chiu, supra*, 59 Cal.4th 155.

In *Lee*, the California Supreme Court considered "whether section 664 [, subdivision (a)] requires that in order to be punished with life imprisonment for attempted murder as an aider and abettor, an individual must personally act with willfulness, deliberation, and premeditation." (*Lee, supra*, 31 Cal.4th at p. 620.)  It answered the question in the negative, explaining the statute's language leads to the interpretation it "require[s] only that the murder attempted was willful, deliberate, and premeditated, . . . not [that it] require[s] . . . an attempted murderer personally acted with willfulness, deliberation, and premeditation . . . ." (*Id*. at p. 627.)

*Favor*, *supra*, 54 Cal.4th 868, extended *Lee* to aider and abettor liability for attempted premeditated murder under the natural and probable consequences doctrine.  In *Favor*, a jury convicted the defendant of two counts of robbery and two counts of attempted murder, on the theory that the nontarget attempted murder offenses were a natural and probable consequence of the target robbery offenses which the defendant aided and abetted. (*Id*. at p. 871.)  The question before our Supreme Court was whether an aider and abettor who knew of and intended to facilitate the target offense of robbery could be convicted of attempted premeditated murder under the natural and probable consequences doctrine where the jury was instructed that a conviction required *only* that attempted murder was a natural and probable consequence of the robbery, and *not* instructed that attempted *premeditated* murder was a natural and probable consequence of the robbery.

15

The *Favor* court upheld the defendant's conviction, concluding there was no instructional error. (*Favor, supra*, 54 Cal.4th at p. 872.) It explained "there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*Id.* at p. 880.)

In reaching its conclusion, the *Favor* court's rationale was threefold. First, it relied on *Lee*, reiterating observations made in support of that decision. (*Favor, supra*, 54 Cal.4th at p. 878.) It also emphasized dictum in *Lee* stating that "'where the natural-and-probable consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy'" (*Favor*, at p. 878), and noted the Legislature subsequently modified other portions of section 664, including portions of subdivision (a), without changing the penalty provision. (*Favor,* at pp. 878-879.)

Second, the *Favor* court confirmed then current law that attempted premeditated murder and attempted unpremeditated murder are not separate offenses. (*Favor, supra*, 54 Cal.4th at p. 876.) Rather, the sole crime is attempted murder and the premeditation aspect simply impacts sentencing. (*Id.* at p. 877.)

Third, the court mentioned the sequential order in which a jury considers and decides allegations under section 664. It explained "the jury does not decide the truth of the penalty premeditation allegation until it first has reached a verdict on the substantive offense of attempted murder." (*Favor, supra*, 54 Cal.4th at p. 879.) In other words, only after a jury finds an aider and abettor, in general or under the natural and probable consequences doctrine, is guilty of an attempted murder, does it separately determine whether the attempted murder was willful, deliberate, and premeditated. (*Id.* at p. 880.)

16

As we will explain in greater detail *post*, we conclude the ratio decidendi of the *Favor* opinion has been overruled by the ratio decidendi of the United States Supreme Court in *Alleyne*, *supra*, 570, U.S. 99, thus freeing us from the potential stare decisis strictures of the *Favor* opinion. The *Favor* court held that in the prosecution of an aider and abettor for attempted premeditated murder under the natural and probable consequences doctrine the jury is *not* required to find that deliberation and premeditation is the natural and probable consequence of the target crime. (*Favor*, *supra*, 54 Cal.4th at p. 872.) In contrast, the *Alleyne* court held under the Sixth Amendment that any fact which increases the minimum penalty for a crime *must* be submitted to the jury and found beyond a reasonable doubt. (*Alleyne*, at p. 103.) Here, the fact that increases the minimum penalty for attempted murder is simply this: The *deliberate and premeditated attempted murder was the natural and probable consequence of the target crime.*

Before analyzing further the implications of *Alleyne*, however, we pause to consider whether attempted premeditated murder under the natural and probable consequences doctrine is any longer a crime as a matter of state law.

### D. The Special Finding of Deliberation and Premeditation Cannot be Based on the Natural and Probable Consequences Doctrine

In *Chiu*, the California Supreme Court held an aider and abettor may not be convicted of first degree murder under a natural and probable consequences theory. (*Chiu*, *supra*, 59 Cal.4th at p. 167.) To reach that conclusion, the *Chiu* court started with the language of the aider and abettor statute (§ 31), which it found ambiguous. (*Chiu*, at p. 164.) It then explained that the purpose served by the natural and probable consequences theory in the murder context is deterrence—deterring people from aiding or encouraging the commission of offenses that would naturally and foreseeably result in an unlawful killing. (*Id*. at p. 165.) It thereafter concluded that purpose would not be served by holding an aider and abettor responsible for premeditated murder under a

17

natural and probable consequences theory because the perpetrator's premeditative state is too personal, uniquely subjective and attenuated. (*Id*. at p. 166.)

Faced with a question identical to the one in this case, the majority of another panel of this court recently found the reasoning and holding in *Chiu* compel the conclusion that an aiding and abetting defendant may not be convicted of attempted first degree murder under a natural and probable consequences theory. (*People v. Mejia* (2019) 40 Cal.App.5th 42, 50, review granted Jan. 2, 2020, S258796, (*Mejia*).) The crux of its rationale was as follows: "The critical holding in *Chiu* is that the perpetrator's mental state of premeditation and deliberation 'is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine.' [Citation.] It follows then that in the context of attempted murder, the perpetrator's mental state of premeditation and deliberation is equally too attenuated to impose liability for premeditation and deliberation on an aider and abettor under the natural and probable consequences doctrine. The unique mental state of willfulness, premeditation, and deliberation is no less subjective and personal in the context of attempted murder than it is in the context of murder." (*Id*. at p. 49.)

The analysis in *Mejia* is compelling because it is logically impossible to adhere to both *Favor* and *Chiu*. We recognize, however, that the California Supreme Court will have the final word on the *Mejia* court's conclusion during its review of both *Lopez*, *supra*, 38 Cal.App.5th 1087 and *Mejia*. If the California Supreme Court agrees that *Mejia* was correctly decided, the jury's special finding here of deliberation and premeditation would fall as a matter of state law. If the California Supreme Court decides otherwise, the special finding of deliberation and premeditation would nevertheless necessarily be vacated under the United States Supreme Court's construction of the Sixth Amendment in *Alleyne*, a topic to which we now turn.

E. We are Bound to Follow *Alleyne's* Interpretation of the Sixth Amendment Which Rejected *Favor's* Ratio Decidendi

In *Alleyne*, *supra*, 570, U.S. 99, a case decided approximately two years after *Favor*, the United States Supreme Court held that the Sixth Amendment requires any fact that, by law, increases the mandatory *minimum* penalty for a crime to be treated as an "element" of the crime, meaning it must be submitted to the jury and found true beyond a reasonable doubt. (*Alleyne, supra*, 570 U.S. at p. 103.) The high court based the holding on its earlier decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466, in which it concluded any fact that increases the *maximum* penalty for a crime is an element of the offense which a jury must find true beyond a reasonable doubt. (*Alleyne,* at pp. 111-112.)

Under section 664, subdivision (a), the minimum prison term for attempted murder, where there is no finding of deliberation and premeditation, is five years. Where a finding of deliberation and premeditation has been made, the penalty is a life term (*ibid*.), which has a minimum parole period of seven years. (§ 3046, subdivision (a)(1).) Thus, it is beyond dispute that a finding of deliberation and premeditation increases the minimum penalty for attempted murder. The *fact* that triggers imposition of the increased penalty under the natural and probable consequences doctrine is that """"a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted."""" (*Chiu, supra* at p. 162.)

The issue, then, is whether the foreseeability of a deliberate and premeditated murder is an "element" of the charged offense of attempted murder, at least for Sixth Amendment purposes. Defendant's argument here mirrors the defendant's argument in *Favor*. The defendant in *Favor* contended "that the willful, deliberate, and premeditated findings should be vacated. He argue[d] that the trial court failed to instruct that the jury had to find, not only that the attempted murder was a natural and probable

19

consequence of the robberies, but also that the perpetrator's willfulness, deliberation, and premeditation were natural and probable consequences." (*Favor, supra*, 54 Cal.4th at p. 874)  *Favor* squarely held foreseeability of premeditation was not an element of the offense of attempted murder but *did not analyze the issue under the Sixth Amendment*. As explained in *Favor*, "[A]ttempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees. [Citations.]  '[T]he provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is "willful, deliberate, and premeditated" does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder.'  [Citation.]  '[T]he statutory language employed in prescribing an additional penalty for attempted murder . . . reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense.'" (*Favor*, *supra*, 54 Cal.4th at pp. 876-877.)

That analysis was rejected by *Alleyne*, at least for purposes of deciding whether defendant received a fair trial by jury under the Sixth Amendment.  "The essential Sixth Amendment inquiry is whether a fact is an element of the crime.  When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Alleyne*, *supra*, 570 U.S. at p. 114-115.)  "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." (*Id*. at p. 103.)  "Decisions of the United States Supreme Court are binding not only on all of the lower federal courts, but also on state courts when a federal question is involved, such as constitutionality of a statute or construction of the federal Constitution or statutes." (9 Witkin, California Procedure (5th ed. 2020) Appeal, § 505; *Moon v. Martin* (1921) 185 Cal. 361, 366 ["state courts are bound by the decision of the supreme

20

court of the United States on questions depending upon the construction of the United States constitution"].)

Here, the jury was instructed as follows: "Before you may decide whether [defendant] is guilty of attempted murder . . . , under a Natural and Probable Consequences theory of guilt, you must decide whether he is guilty of disturbing the peace in violation of section 415[, subdivision (1)] of the Penal Code. [¶] To prove that the defendant is guilty of attempted murder . . . , the people must prove": "1. The defendant is guilty of disturbing the peace in violation of section 415[, subdivision (1)] of the Penal Code;' 2. During the commission of disturbing the peace in violation of section 415[, subdivision (1)] of the Penal Code a coparticipant in that disturbing the peace in violation of section 415[, subdivision (1)] of the Penal Code committed the crime of attempted murder"; and "3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the attempted murder . . . was a natural and probable consequence of the commission of the disturbing the peace in violation of section 415(1) of the Penal Code." The jury was *not* instructed that in order to find the special finding true, it needed to find that attempted *premeditated* murder was a natural and probable consequence of disturbing the peace.

Under the teaching of *Alleyne*, where defendant is prosecuted for attempted premeditated murder under the natural and probable consequences doctrine, the jury must be instructed that it needs to find the attempted *premeditated* murder was a natural and probable consequence of disturbing the peace. The court's failure to do so here deprived defendant of his Sixth Amendment right to a fair trial. Because this violation of defendant's federal constitutional rights was not harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24), we vacate the findings that the attempted murders were willful, deliberate, and premeditated. We remand the matter to the trial court to provide the prosecution an opportunity to decide whether to retry defendant on these special findings with appropriate jury instructions.

21

*Sufficiency of the Evidence*

The prosecution proceeded against defendant on an aiding and abetting, natural and probable consequences theory, with the alleged target crime being unlawfully challenging another person in a public place to fight (§ 415, subd. (1)). Defendant's counsel objected to instructing the jury on that crime, arguing the facts in this case, as a matter of law, did not demonstrate a challenge to fight, within the meaning of section 415. The trial court disagreed and gave the relevant instruction. Defendant contends there was insufficient evidence to support giving the instruction, as well as a lack of substantial evidence supporting his convictions based thereon. We conclude otherwise.

In a criminal case, the trial court "must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof. [Citation.] We review the trial court's decision de novo. In so doing, we must determine whether there was indeed sufficient evidence to support the giving of [the challenged] instruction. Stated differently, we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed" the offense on which the court instructed. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

Section 415, subdivision (1), imposes misdemeanor liability on "[a]ny person who unlawfully fights in a public place or challenges another person in a public place to fight." "A *challenge* to fight is prohibited because such a challenge may provoke a violent response that endangers not only the challenger but any other persons who may be in the public place where the challenge occurs. Because the statute is aimed at the inherent danger that a challenge will result in violence, it is irrelevant whether the challenger intended to actually cause a fight." (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 998.)

22

Here, the evidence demonstrated defendant and Mendoza jumped a fence from territory claimed by Hard Times into an area bordering the territory claimed by one of their rival gangs, Santa Nita. They approached three males and asked them, "Where you from?" The prosecution's gang expert testified that when gang members "hit up" others with such a question, it is a form of aggression. They wait for a reply, and then "things happen" based on the reply. If the response "comes back as a rival, they're going to have to engage in a fight." In other words, according to the expert, "if [gang members are] initiating contact, they're expecting to go."

From this evidence, a reasonable trier of fact could find beyond a reasonable doubt that defendant and Mendoza issued a challenge to fight. (See *People v. Medina* (2009) 46 Cal.4th 913, 922, 927; *In re Cesar V., supra*, 192 Cal.App.4th at pp. 998-999.) We reject defendant's contention that an implied challenge to fight falls outside the scope of section 415. Defendant provides no legal authority for that proposition and nothing in the language of the statute suggests such a limitation. And contrary to defendant's assertion, it is irrelevant there was a possibility no fight would ensue. (*In re Cesar V.,* at p. 999 & fn. 5.)

Because defendant's argument concerning sufficiency of the evidence to support his attempted murder conviction is premised on the same facts and law as his challenge to the court's instruction on section 415, we likewise find it meritless. (See *People v. Cravens* (2012) 53 Cal.4th 500, 508 [under substantial evidence standard of review, "[t]he conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]"'"].)

23

## DISPOSITION

The judgment on the three attempted murder convictions is affirmed, but the special findings that the attempted murders were willful, deliberate, and premeditated is vacated.  The judgment is otherwise affirmed.  The matter is remanded to give the prosecution the opportunity to decide whether to retry defendant on the special findings under jury instructions consistent with this opinion and for resentencing.


IKOLA, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.